UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-80126-Cannon/McCabe

SHOW PLUS PROMOTIONS, LLC;
et al.,

    Plaintiffs,

v.

VALLEY NATIONAL BANCORP.
d/b/a AGILE PREMIUM FINANCE, and
BOB PRZESPOLEWSKI,

    Defendants.

_____/

**REPORT & RECOMMENDATION**

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Amended Complaint ("Motion"), which was referred to the undersigned by United States District Judge Aileen M. Cannon for a Report & Recommendation. (DE 14, DE 15). For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART.**

**I.**    **BACKGROUND**

This is a business dispute involving a series of premium financing agreements in the equestrian event industry. The Court accepts the following facts as true, taken from the Amended Complaint. (DE 12). The Plaintiffs consist of several interconnected companies under the common control of Wayne Jenkins, including CaptiveOne Advisors, LLC ("CaptiveOne"); Captive One Services, LLC ("CaptiveOne Services"); Show Plus Promotions, LLC ("Show Plus"); Travel Plus Promotions, LLC ("Travel Plus"); and VenturePlus Promotions, LLC ("Venture

Plus"). (DE 12 ¶¶ 14-19). Together, these companies serve clients in the equestrian event industry by, among other things, helping to arrange insurance coverage for horses, equipment, and attendees at horse shows and events throughout the country. (DE 12 ¶¶ 14-15). Plaintiffs' business model involves serving as a middleman between clients who wish to engage in equestrian events and insurance companies who can provide coverage for such events. (DE 12 ¶ 15). As part of their business model, Plaintiffs frequently utilize the services of third-party premium financing companies so that clients do not miss premium payments owed to insurance companies. (DE 12 ¶ 20).

Defendant Valley National Bancorp ("Valley") is a nationally charted bank. (DE 12 ¶ 33). Valley operates a division of the bank, Agile Premium Finance ("Agile"), that offers premium financing services. (DE 12 ¶¶ 22, 25). Defendant Bob Przespolewski serves as the president of the Agile division. (DE 12 ¶¶ 37, 43).

In 2023, various of the Plaintiff entities and/or their clients entered into premium financing agreements ("PFAs") with Agile, under which Agile agreed to finance premium payments owed to insurance companies. (DE 12 ¶¶ 22, 26). These PFAs included the following:

- a PFA dated June 11, 2023, between Agile (as lender) and Travel Plus (as borrower/insured)[1] (hereafter the "Travel Plus PFA"). (DE 12-1).

- a PFA dated June 12, 2023, between Agile (as lender) and 4 Beauty Aesthetic Institute, Inc. ("4 Beauty") (as borrower/insured) (hereafter the "4 Beauty PFA"). (DE 12-2).

---

[1] The Travel Plus PFA also identifies the borrower/insured as one of Plaintiffs' clients, The Dutta Corporation ("Dutta"). (DE 12-1 at 1). The Amended Complaint alleges that Dutta never signed the agreement and hence never became a party to it. (DE 12 at 11). Instead, Travel Plus signed the agreement as both the borrower and insured. (DE 12-1 at 1).

2

- a PFA dated June 23, 2023, between Agile (as lender) and Show Plus (as borrower/insured) (hereafter the "Show Plus PFA"). (DE 12-3).

Plaintiffs allege that Agile, through its employees and its president Przespolewski, committed a variety of misconduct in connection with these PFAs including the following:

- preventing Plaintiffs and/or their clients from making payment to Agile,

- sending erroneous cancellation and delinquent payment messages to one of Plaintiffs' longest tenured clients, Dutta, causing Dutta to terminate its business relationships with Plaintiffs,

- misappropriating Plaintiffs' clients' payments by erroneously sending money to an incorrect entity,

- improperly issuing incorrect premium finance policies to Plaintiffs' client 4 Beauty and miscommunicating with 4 Beauty regarding amounts due, causing 4 Beauty to terminate its business relationship with Plaintiffs.

(DE 12 ¶ 37).

In addition, Plaintiffs allege that Defendant Przespolewski made defamatory statements to the owner of 4 Beauty, Constantino Mendieta M.D. in early December 2023. (DE 12 ¶¶ 43-44). Specifically, Przespolewski told Dr. Mendieta that CaptiveOne and Jenkins were "up to funny business and fraud." (DE 12 ¶ 43). Plaintiffs allege that Przespolewski made these remarks with the intent to damage Jenkins and CaptiveOne in their business and professional reputations. (DE 12 ¶ 43).

Based on the above facts, Plaintiffs allege six counts as follows:

| | |
|---|---|
| Count I | Professional Negligence, brought by all entity Plaintiffs against Agile |
| Count II | Breach of the Implied Covenant of Good Faith and Fair Dealing, brought by Travel Plus and Venture Plus against Agile concerning the Travel Plus PFA |
| Count III | Breach of the Implied Covenant of Good Faith and Fair Dealing, brought by CaptiveOne Services against Agile concerning the 4 Beauty PFA |
| Count IV | Equitable Accounting, brought by all entity Plaintiffs against Agile |
| Count V[2] | Defamation Per Se, brought by Jenkins and CaptiveOne against Agile and Przespolewski |
| Count VI | Defamation Per Quod, brought by Jenkins and CaptiveOne against Agile and Przespolewski |

(DE 12 ¶¶ 47-107).

## II. LEGAL STANDARD

By way of this Motion, Defendants seek dismissal of all six counts pursuant to Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[2] The Amended Complaint erroneously included two Count IVs. The Court has corrected the numbering for purposes of this Report & Recommendation.

### III. DISCUSSION

The Court will address each of the six counts in turn.

#### A. Count I – Professional Negligence

Count I alleges professional negligence against Agile, brought by all entity Plaintiffs. (DE 12 ¶¶ 9, 20-45, 47-59). To state a claim for professional negligence under Florida law, a plaintiff must allege facts that show: "(1) existence of a legal duty, (2) breach of the duty, (3) proximate causation, and (4) actual loss." *NCM of Collier Cnty., Inc. v. Durkin Grp., LLC*, No. 2:11-cv-558-FTM-99DNF, 2012 WL 2389756, at *2 (M.D. Fla. June 25, 2012) (citing *Curd v. Mosaic Fertilizer*, 39 So. 3d 1216, 1227 (Fla. 2010)). As set forth below, the Court finds that Plaintiffs cannot satisfy element (1), namely, the existence of a legal duty, for three reasons.

##### 1. "Professional"

First, in the Court's view, a premium finance company does not engage in a "profession" for purposes of a professional negligence claim. Though not dispositive on the issue, Florida courts have defined a "profession," for purposes of the statute of limitations, as "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." *Garden v. Frier*, 602 So. 2d 1273, 1275 (Fla. 1992). Borrowing from this standard, courts have been slow to expand the scope of "professions" to vocations that do not require a four-year degree. *See Hoskins v. Metzger*, 102 So. 3d 752, 754 (Fla. 2d DCA 2012) (noting that "we are not entirely convinced that [a private investigator] qualifies as a professional for tort liability"); *Sunset Beach Investments, LLC v. Kimley-Horn and Associates, Inc.*, 207 So. 3d 1012, 1017 (Fla. 4th DCA 2017) (declining to find an engineering intern to be a professional subject to liability for a professional negligence claim); *Wall St. Mort. Bankers, Ltd. v. Attorneys' Title Ins. Fund, Inc.*, No. 08-cv-21648, 2009 WL 10667840 (S.D. Fla. Sept. 9, 2009) *R. & R. adopted sub nom.*, 2009 WL

10668983 (S.D. Fla. Nov. 12, 2009) (declining to find an insurance broker to be a professional for purposes of professional liability exception to economic loss rule). This Court, too, declines to expand the definition and will not recognize those who engage in the premium finance business to be "professionals" for purposes of professional negligence claims.

The Court has considered, but finds unpersuasive, Plaintiffs' argument that Agile should be deemed a "professional" by virtue of Florida's statutory scheme for licensing and regulating premium finance companies, set forth in Fla. Stat. § 627.826, *et seq*. In the Court's view, mere licensing and regulation does not convert every vocation into a profession for purposes of tort liability. Moreover, as Agile points out, as a division of a bank, Agile is exempt from Florida's statutory scheme anyway. *See* Fla. Stat. § 627.826(2)(a) ("The following entities are exempt from the provisions of this part: … banks … or their federally chartered counterparts.").

The Court likewise rejects Plaintiffs' argument that Agile should deemed a "professional" by virtue of the definitions section of Florida's Professional Service Corporation and Limited Liability Company Act, Fla. Stat. § 621.01, *et seq*. That statute defines the term "professional service" as follows:

> (1) The term "professional service" means any type of personal service to the public which requires as a condition precedent to the rendering of such service the obtaining of a license or other legal authorization. By way of example and without limiting the generality thereof, the personal services which come within the provisions of this act are the personal services rendered by certified public accountants, public accountants, chiropractic physicians, dentists, osteopathic physicians, physicians and surgeons, doctors of medicine, doctors of dentistry, podiatric physicians, chiropodists, architects, veterinarians, attorneys at law, and life insurance agents.

Fla. Stat. § 621.03(1).

The Court finds this definition inapplicable because it exists as part of the statutory framework for allowing professionals to organize themselves into professional corporations and

limited liability companies ("LLCs"), using monikers such as "P.A." and "PLLC." *See* Fla. Stat. § 621.12. The Florida Legislature enacted this statute to allow professionals who had traditionally practiced as partnerships to obtain the federal tax benefits afforded corporations. *Porlick, Poliquin, Samara, Inc. v. Compton*, 683 So. 2d 545, 547 (Fla. 3d DCA 1996). Under the statute, professional corporations and LLCs are subject to significant limitations, including limitations on who can own stock, *see* Fla. Stat. § 621.09 (limiting stock ownership solely to other professionals), and limitations on public branding, *see* Fla. Stat. § 621.12 ("specifically" prohibiting professional corporations from using the words "company," "corporation," or "incorporated" in their names).

Nothing in the Amended Complaint suggests that Agile has organized itself as a professional corporation or LLC pursuant to Florida's statutory scheme. To the contrary, Agile appears to be a division of a publicly chartered bank. (DE 12 ¶ 33). Moreover, in the Court's view, Agile does not provide the type of "personal service to the public" akin to the other examples set forth in Fla. Stat. § 621.03, such as doctors, lawyers, accountants, and the like. Instead, based on the allegations of the Amended Complaint, Agile acts as a lender in typical arms-length, borrower-lender transactions. The Court does not view this activity to constitute a "profession" for purposes of a professional negligence claim.

2. **Purely Economic Harm**

Second, absent a professional duty, Florida law does not recognize a cause of action for negligence grounded solely on economic harm; bodily injury or property damage is normally required. *Monroe v. Sarasota Cnty. Sch. Bd.*, 746 So. 2d 530, 531 (Fla. 2d DCA 1999). Negligence claims based solely on economic harm can proceed "only under extraordinary circumstances" that "clearly justify judicial interference to protect a plaintiff's economic expectations." *Id.* "[T]o proceed on a common law negligence claim based solely on economic loss, there must be some

sort of link between the parties or some other extraordinary circumstance that justifies recognition of such a claim." *Tank Tech, Inc. v. Valley Tank Testing, L.L.C*, 244 So. 3d 383, 393 (Fla. 2d DCA 2018) (cleaned up).

The Amended Complaint identifies no extraordinary circumstance to justify imposition of a negligence-based duty of care to protect against economic harm. The mere existence of a borrower-lender relationship does not suffice. *See Suzmar, LLC v. First Nat'l Bank of S. Miami*, No. 3D22-1839, 2023 WL 5597394, at *2 (Fla. 3d DCA Aug. 30, 2023) ("In Florida … banks have no duty to customers to prevent negligent lending absent a fiduciary relationship."); *see also Boucher v. First Cmty. Bank of Orange City*, 626 So. 2d 979, 983 (Fla. 5th DCA 1993) ("Although it may have been poor business practice for First Community to have closed the loan without first inspecting the collateral, it had no obligation to do so on the Bouchers' behalf."). Count I should be dismissed for this reason as well.

### 3. Independent Tort Doctrine

Third and finally, several of the entity Plaintiffs enjoyed privity of contract with Agile by virtue of the PFAs at issue in the case. (DE 12-1, DE 12-2, DE 12-3). "Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, No. 8:20-cv-604-T-33JSS, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020) (cleaned up). "Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994); *see also Christie v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1232 (S.D. Fla. 2020) ("[F]or a plaintiff to state a viable tort claim where that claim is derived from a contractual relationship, the Plaintiff must

allege all required elements for its cause of action and state a recognized duty existing outside of that contractual relationship") (cleaned up).

Here, Agile's alleged duty of care and the activities associated with its purported breaches arise out of the PFAs attached to the Amended Complaint. Indeed, a close inspection of the Amended Complaint shows little distinction between the conduct alleged to violate Count I (professional negligence) and the conduct alleged to violate Counts II and III (breaches of the implied covenant of good faith inherent in the PFAs). The main body of Plaintiffs' Amended Complaint attached a common label to the conduct supporting all three counts, i.e., "Agile's Negligence and Breaches." (DE 12 ¶ 37(a)-(g)). Given these overlapping and indistinguishable allegations, Count I should be dismissed under the independent tort doctrine as well.

B.  **Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing – Travel Plus PFA**

Count II alleges breach of the implied covenant of good faith and fair dealing, brought by Travel Plus and Venture Plus against Agile concerning the Travel Plus PFA. (DE 12 ¶¶ 60-68). Every contract in Florida contains an implied covenant of good faith and fair dealing. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). The covenant serves as a gap-filling default rule that comes into play "when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards." *Publix Super Markets, Inc. v. Wilder Corp. of Del.*, 876 So.2d 652, 654 (Fla. 2d DCA 2004). "[T]he implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations." *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. 1st DCA 1999). Put another way, the implied covenant requires the party vested with discretion to act in a commercially reasonable manner that satisfies the reasonable expectations of the parties. *See Sepe*

*v. City of Safety Harbor*, 761 So.2d 1182, 1184 n.2 (Fla. 2d DCA 2000) (compiling cases for proposition).

The implied covenant of good faith and fair dealing has two significant restrictions. First, it cannot be invoked to override the express terms of the agreement between the parties. *Weaver*, 169 F.3d at 1317-18. Second, the implied covenant must "relate to the performance of an express term of the contract ... [and] cannot be used to vary the terms of an express contract." *Id.* at 1316. Put another way, the implied covenant is not a stand-alone "independent term" of the contract; it must be tied to an express term. *See Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001).

In this case, the Court has reviewed the allegations of Count II and finds them sufficient to survive dismissal. Plaintiffs have identified two express terms of the Travel Plus PFA that afforded discretion to Agile or left gaps to be filled by the implied covenant of good faith. First, page 1 of the contract provided as follows:

> Promise to Pay: In return for the payment(s) that Agile Premium Finance has advanced to pay my insurance policy or policies listed in this agreement, I promise to make monthly payments as shown in this agreement. I will make these monthly payments until I have paid the full amount advanced me or on my behalf, plus the finance charges and any other charges I may owe as shown on this agreement. I understand that payment will be payable at the office of Agile Premium Finance, PO Box 549, Newark, NJ 07101-0549.

(DE 12-1 at 1).

Plaintiffs allege they sought to make their monthly payment via electronic means, a common occurrence in today's commercial world. (DE 12 ¶ 65). Plaintiffs further allege that Agile frustrated the parties' reasonable commercial expectations by failing to provide Plaintiffs with the instructions necessary to make electronic payments. (DE 12 ¶ 66). Plaintiffs allege this failure prevented them from making payments in a timely manner which, in turn, triggered defaults of their payment obligations. (DE 12 ¶ 66).

Plaintiffs next point to page 2 of the Travel Plus PFA, which governed Agile's rights in the event of a default. It provided, *inter alia*:

> Default.
> …
> In the event of a default, Agile Premium Finance can demand agreement be paid in full regardless of whether unearned premium has been refunded. Agile Premium Finance may take any action, not prohibited by law, to collect payment of any unpaid amounts due. Insured agrees to pay all applicable cancellation charges, interest charges, collection costs and expenses incurred by Agile Premium Finance as a result of or in connection with enforcing its rights under this agreement.

(DE 12-1 at 2). Pursuant to this provision, Agile sent multiple notices of "Intent to Cancel." (DE 12 ¶ 68, DE 12-8, DE 12-10).

Plaintiffs allege that Agile frustrated the parties' reasonable commercial expectations by sending these notices to the wrong place. (DE 12 ¶ 67). Rather than send the notices to Travel Plus, Agile sent the notices to Plaintiff's client Dutta, a non-signatory to the policy. (DE 12 ¶ 67). This caused Dutta to send a series of angry emails and letters insisting it had never entered into a contract with, or agreed to pay any money to, Agile. (DE 12-8, DE 12-10). The Amended Complaint alleges that, as a result of the improper default notices, Dutta terminated its business relationship with Plaintiffs, causing damage. (DE 12 ¶ 67).

The Court finds that the above allegations sufficient to state a plausible claim for breach of the implied covenant of good faith and fair dealing under Florida law. As such, the Motion should be denied as to Count II.

> **C.     Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing – 4 Beauty PFA**

Count III alleges breach of the implied covenant of good faith and fair dealing concerning the 4 Beauty PFA, brought by CaptiveOne Services against Agile. (DE 12 ¶¶ 69-73). The Amended Complaint alleges the following collection of breaches:

>Agile materially breached the covenant of good faith and fair dealing of the 4 Beauty and Services PFA when after it grossly overcalculated and incorrectly approved 4 Beauty for 2 million dollars in premium finance during the underwriting of the loan, it cancelled the original policy and improperly replaced it with an adjusted policy containing a payment obligation that still exceeded reasonable repayment and underwriting guidelines (i.e., much more than cash flow of the business would support). Agile further materially breached the covenant of good faith and fair dealing when it when it improperly and immediately sent 4 Beauty a default notice and invoice, which incorrectly reflected that repayment of the insurance premium was owed approximately 3 days after Agile had just financed the premium, well before the correct due date. Agile materially breached covenant of good faith and fair dealing of the 4 Beauty and Services PFA by wrongly requiring two premium payments within six weeks of signing the policy. Despite Company Plaintiffs requesting that a $500,000 premium policy be issued to 4 Beauty instead, as that should always have been the policy all along, Agile took the position that all premiums were fully earned at the moment the policy to 4 Beauty closed, wrongly held 4 Beauty to be in default, and wrongly claimed all principal and interest was accelerated and owed by 4 Beauty immediately.

(DE 12 ¶ 71).

The Court finds these allegations insufficient to survive dismissal for multiple reasons. First, to the extent Plaintiffs claim that Agile committed a breach by "grossly overcalculat[ing] and incorrectly approv[ing] 4 Beauty for 2 million dollars in premium finance," this allegation fails because it contradicts the express terms of contract. The 4 Beauty PFA – signed by Dr. Mendieta on behalf of 4 Beauty – expressly called for 4 Beauty to borrow and finance $1,920,954.10. (DE 12-2 at 1). A party cannot invoke the implied covenant of good faith to override or contradict the express terms of the written agreement. *Weaver*, 169 F.3d at 1317-18.

Next, to the extent Plaintiffs complain about breaches of an "adjusted policy," Plaintiffs have not attached the adjusted policy to their Amended Complaint. It is therefore impossible for the Court to determine whether any of Plaintiffs' alleged breaches of the implied covenant can be tied to any express provisions of the contract, as required by law. The Amended Complaint itself likewise makes no effort to tie any of the implied breaches to any express terms of the new, "adjusted" 4 Beauty PFA.

Finally, the party aggrieved by the alleged breaches set forth in Count III appears to be 4 Beauty, not any of the Plaintiff entities. Though not briefed by the parties, the Court questions how any of the Plaintiff entities can complain of breaches directed toward 4 Beauty. To the extent this issue arises again, the Court directs the parties to brief this issue. In the meantime, Count III should be dismissed.

### D.   Count IV – Equitable Accounting

Count IV alleges a claim for equitable accounting, brought by all entity Plaintiffs against Agile. (DE 12 at 24). As Plaintiffs point out, the Florida legislature has already granted the customers of licensed premium finance companies the right to request an annual accounting as follows:

> At any time after the execution of a premium finance agreement, but not later than 1 year after the last payment thereunder, the premium finance company holding the premium finance agreement shall, upon written request of the insured, give or mail to her or him a written statement of the dates and amounts of payments and the total amount, if any, unpaid thereunder. A statement shall be supplied once each year without charge….

Fla. Stat., §627.845(1). As previously explained, of course, Agile enjoys exemption from this and other regulatory requirements due to its status as a division of a publicly chartered bank.

Unable to obtain the information described in the statute, Plaintiffs turn to this Court for an equitable accounting instead, seeking a full accounting of the Travel Plus PFA, the 4 Beauty PFA, and the Show Plus PFA. Florida law recognizes two methods to state a claim for equitable accounting. First, a plaintiff can plead facts that show "a sufficiently complicated transaction" *and* "an inadequate remedy at law." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1311 (11th Cir. 2014). Second, a plaintiff can plead facts that show the existence of a fiduciary relationship between the parties. *Id.*; *see also* 1 Fla. Jur. 2d Accounts and Accounting § 19 (Equitable accounting, generally).

The Court finds that Plaintiffs cannot state a plausible claim under either method. As to the first method, Plaintiffs already have an adequate remedy at law in the form of contract-related claims as to all three PFAs. *See Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) ("When a judgment for breach of contract is obtainable, the remedy at law is considered adequate, precluding the need for the imposition of an equitable remedy."). As to the second method, Plaintiffs have not pled any facts to show the existence of a fiduciary relationship with Agile. Rather, the Amended Complaint shows an arms-length, borrower-lender relationship. *See Tatum v. SFN Grp., Inc.*, 698 F. App'x 1000, 1009 (11th Cir. 2017) ("Under Florida law, '[w]hen the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other.'") (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So.2d 536, 541 (Fla. 5th DCA 2003)). As such, Count IV should be dismissed.

E. **Count V and Count VI – Defamation Per Se/Per Quod**

Counts V and VI allege, respectively, claims for defamation per se and defamation per quod, brought by Plaintiffs Jenkins and CaptiveOne against Defendants Agile and Przespolewski. (DE 12 ¶ 26-30). To assert a claim for defamation under Florida law, a plaintiff must allege facts that show "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party, and (4) that the falsity of the statement caused injury to the plaintiff." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (citing *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999)).

A defamation claim may proceed as defamation per se or defamation per quod. *Flynn v. CNN, Inc.*, No. 8:22-cv-343-MSS-SPF, 2023 WL 5985193, at *4 (M.D. Fla. Feb. 22, 2023). Defamation per se exists "if, when considered alone and without innuendo, it (1) charges that a

person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Id.* (cleaned up). A plaintiff in a defamation per se action need not show any special damages, as defamation per se gives rise to "an absolute presumption of both malice and damage." *Alan*, 604 F. App'x at 865 (citing *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)).

In contrast, defamation per quod allows for consideration of the surrounding context of the defamatory statements. *Flynn*, 2023 WL 5985193, at *4. "In per quod actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo." *Id.* (cleaned up). Put another way, "defamation per quod requires additional explanation of … the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement." *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013). In defamation per quod actions, a plaintiff must allege and prove special damages. *Flynn*, 2023 WL 5985193, at *5.

In this case, Plaintiffs Jenkins and CaptiveOne allege defamation per se and per quod based on statements made by Defendant Przespolewski as president of Agile in or around December 2023 to one of Plaintiffs' customers Dr. Mendieta, president of 4 Beauty. (DE 12 ¶¶ 43, 83, 97). Specifically, Przespolewski verbally told Dr. Mendieta that Jenkins and CaptiveOne were "up to 'funny business' and fraud." (DE 12 ¶ 43). Elsewhere. the Amended Complaint alleges that Przespolewski verbally told Dr. Mendieta that Jenkins and CaptiveOne "were up to 'funny business' and comments giving the clear, yet false, impression that Mr. Jenkins and CaptiveOne were engaging in fraud." (DE 12 ¶¶ 83, 97).

The Court finds these allegations sufficient to state plausible claims for both defamation per se and per quod. As to defamation per se, in the Court's view, an allegation that a person has

engaged in "funny business" "tends to subject one to hatred, distrust, ridicule, contempt, or disgrace" and "tends to injure one in his trade or profession." *See Alan*, 604 F. App'x at 865 (setting forth the standard for defamation per se); *see also Happy Tax Franchising, LLC v. Hill*, No. 19-24539-CIV, 2021 WL 3811041, at *15-16 (S.D. Fla. June 7, 2021) ("[S]tatements regarding fraud and dishonestly are *per se* defamatory as they impute conduct/characteristics incompatible with the proper exercise of his lawful business, trade, profession, or office.") (cleaned up). The Court likewise finds that this accusation satisfies the lower standard for defamation per quod, given the context of the parties' business relationship.

The Court has considered, but finds unpersuasive, Agile's argument that the term "funny business" cannot qualify as defamation because it cannot be proven, objectively, to be either true or false. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (noting that "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment"). The Court disagrees with Agile's premise. In the Court's view, the term "funny business" has a clear, ordinary meaning in the real world, denoting dishonesty, fraud, or trickery. Litigants can readily prove or disprove the truth or falsity of an accusation that a given person was "up to funny business."

The Court has also considered, but finds unpersuasive, Agile's argument that Defendant Przespolewski cannot be held personally liable because he allegedly committed the defamation in his professional capacity as an employee of Agile. (DE 14 at 23). Under Florida law, "officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment." *Muchnick v. Goihman*, 245 So. 3d 978, 981 (Fla. 3d DCA 2018) (cleaned up). "All that needs to be alleged is that the agent or officer personally participated in the tort, even if the complained of action was because of and

16

entirely within the scope of his or her employment." *Id.*; *see also White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005) ("The law is clear to the effect that officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment."). The Court finds the allegations here sufficient to support personal liability.

Finally, the Court has considered, but find unpersuasive, Agile's argument that Plaintiffs have not alleged sufficient facts to show damages. (DE 14 at 25). As to defamation per se, the law presumes damages. *Block v. Matesic*, No. 21-61032-CIV, 2023 WL 8527670, at *8 (S.D. Fla. Dec. 8, 2023). As to defamation per quod, the Amended Complaint alleges, inter alia, that Defendants' wrongful actions caused lost profits from the loss of 4 Beauty as a client, as well as a loss of reputation within the industry. (DE 12 ¶¶ 2, 40, 41, 42, 104-105). The Court finds these allegations sufficient to survive dismissal. The Motion should be denied as to Counts V and VI.

## IV. <u>RECOMMENDATION & NOTICE OF RIGHT TO OBJECT</u>

For the reasons stated above, the undersigned **RECOMMENDS** that the Motion (DE 14) be **GRANTED** as to Count I (professional negligence), Count III (breach of the implied covenant of good faith as the 4 Beauty PFA), and Count IV (equitable accounting), but **DENIED** as to Counts II (breach of the implied covenant of good faith as to the Travel Plus PFA), Count V (defamation per se), and Count VI (defamation per quod). As to all counts dismissed, the undersigned recommends that dismissal take place **WITHOUT PREJUDICE** with leave to file a Second Amended Complaint, given that the Court has not previously reviewed the merits of any version of Plaintiffs' complaint. **Pending the District Judge's resolution of this Report and Recommendation, Plaintiff may only file an amended pleading in full compliance with Fed. R. Civ. P. 15.**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 13th day of May 2024.

_____
RYON M. MCCABE
U.S. MAGISTRATE JUDGE